IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Chapin Furniture Outlet, Inc., a South Carolina domestic corporation, | ) ) ) | C/A No. 3:05-1398-MBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Town of Chapin, a municipality; Stanley Shealy, Mayor of Town of Chapin; and Adrienne Thompson, Zoning Administrator of the Town of Chapin, | ) ) ) ) ) ) | **OPINION AND ORDER** |
| Defendants. | ) ) ) | |

Plaintiff Chapin Furniture Outlet, Inc. operates a furniture store in Chapin, South Carolina. On August 20, 2004, Plaintiff erected at its place of business an electronic message center (EMC) that is designed to use visual effects to change between one message to another, or scroll to display a longer message that can otherwise fit on the sign. At the time of the underlying complaint, Article 9, Section 901(G) of the Town of Chapin Zoning Ordinance (the "Ordinance") prohibited:

> Flashing signs, signs with flashing or reflective disks, signs with flashing lights or lights of changing degree of intensity or color or signs with electronically scrolled messages (except government signs and signs which give time and temperature information). If a time and temperature sign alternates between a time message and a temperature message it shall continuously show one message a minimum of three (3) seconds in time before switching to the other message.

On August 21, 2004, Defendant Adrienne Thompson, Zoning Administrator, witnessed the sign being operated in a manner that was in violation of Section 901(G) and informed Plaintiff of the violation. On or about September 21, 2004, Defendant Thompson sent a letter to Plaintiff informing it that the sign would need to be removed. When Plaintiff did not comply, Defendant

Stanley Shealy, Mayor, sent a letter to Plaintiff demanding that the sign be removed, and giving Plaintiff until March 31, 2005 to do so. Plaintiff thereafter brought this action on May 12, 2005, asserting that Section 901(G) violated Plaintiff's rights under the First and Fourteenth Amendments to commercial speech (Count 1); to speech using EMCs (Count II); to non-commercial speech (Count IV); and to non-commercial speech based on viewpoint (Count V). Plaintiff further contends that Article 9 of the Ordinance violates the First Amendment through unreasonable time, place, or manner regulation (Count VI); facially insufficient procedural safeguards (Count VII); grant of overbroad discretion (Count VIII); overbroad regulation of speech (Count X).[1] Plaintiff alleges that it has been denied equal protection in violation of the Fourteenth Amendment (Count IX). Plaintiff seeks declaratory and injunctive relief and nominal and consequential damages.

On February 17, 2006, Defendants filed a motion for summary judgment. The same day, Plaintiff filed a motion for partial summary judgment. Each party filed a response to the opposing party's motion on March 31, 2006. The matter came before the court for a hearing on June 22, 2006. The court was informed at the hearing that the Town was in the process of amending the sign ordinance. The Town approved the revised ordinance on July 18, 2006.

On August 18, 2006, the court issued an order to show cause why the action should not be dismissed as moot. Defendants responded to the court's order on August 15, 2006. Plaintiff responded to the court's order on August 16, 2006.

---

[1] Plaintiff also alleged a taking without payment of just compensation, as guaranteed by the Fifth and Fourteenth Amendments. (Count III). Plaintiff has withdrawn this allegation. See Plaintiff's Response to Court's Order to Show Cause, p. 2 n.1.

2

<u>DISCUSSION</u>

A.    <u>Mootness</u>

The initial question is whether Plaintiff's claims are moot because of the Town's enactment of a new ordinance.  Mootness is a function of the Article III "case or controversy" limitation on the jurisdiction of the federal courts.  <u>American Legion Post 7 v. City of Durham</u>, 239 F.3d 601, 605 (4th Cir. 2001)(citing <u>National Advertising v. City of Fort Lauderdale</u>, 934 F.2d 283, 286 (11th Cir. 1991)).  The mere amendment or repeal of a challenged ordinance does not automatically moot a challenge to that ordinance.  <u>Id.</u> (citing <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289 (1982)).  The repeal or amendment of a statute does not render a challenge moot if there is a likelihood that the challenged law will be reenacted if the case is dismissed.  <u>Id.</u> at 606.  "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  <u>United States v. Concentrated Phosphate Export Assn.</u>, 393 U.S. 199, 203 (1968).  Defendants bear the burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.  <u>See</u> <u>id.</u>

Plaintiff contends that the facts of this case indicate a strong likelihood that the Town will reenact the Ordinance.  Plaintiff notes that the record contains statements tending to show that the citizens of the Town prefer to maintain the atmosphere of a rural community and do not want the town to look commercialized.  According to Plaintiff, public opinion is adverse to EMCs.  Plaintiff asserts that the revised Ordinance was prepared in a brief period after commencement of litigation and was not subjected to significant public comment or deliberation by members of Town Council.

Defendants did not respond to Plaintiff's arguments. Because Defendants have not met their burden of demonstrating that the Town would not reenact the challenged provisions of the Ordinance, the court is compelled to address the allegations of Plaintiff's complaint.

B.    First Amendment Allegations

In evaluating the Ordinance, the court must determine the threshold issue of whether the Ordinance burdens speech and thus is subject to First Amendment scrutiny. See Am. Legion Post 7, 239 F.3d at 606. Even a minor burden on speech is sufficient to trigger a First Amendment analysis. Id.

Outdoor signs are a recognized medium for expressing political, social, and commercial ideas. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 502 (1981). Section 901(G) prohibits "[f]lashing signs, signs with flashing or reflective disks, signs with flashing lights or lights of changing degree of intensity or color or signs with electronically scrolled messages[.]" The Ordinance regulates a protected medium of communication. The court concludes that the Ordinance is subject to First Amendment scrutiny.

The next question is whether the Ordinance imposes content-based or content-neutral restrictions. Arlington Co. Republican Comm. v. Arlington Co., 983 F.2d, 587, 593 (4th Cir. 1993). If the Ordinance is content-neutral, the court must determine whether the Ordinance serves any substantial interest of the Town. See id. If the Town identifies any interest, the court must determine whether the Town narrowly tailored the Ordinance to further the stated interest, and whether the Ordinance leaves open ample alternative means for communicating the desired message. Id. However, if the Ordinance suppresses, disadvantages, or imposes differential burdens upon speech because of its content, the restrictions are content-based and subject to strict scrutiny. Turner

4

Broadcasting Sys., Inc. v. FCC, 512 U.S. 622, 642 (1994). If the court finds the Ordinance to be content-based and subject to strict scrutiny, Defendants must show that the Ordinance's restrictions are "necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).

The "'principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys.'" Id. (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (brackets in original)). As a general rule, a law that by its terms distinguishes favored speech from disfavored speech on the basis of the ideas or views expressed is content-based. Id. at 643. Laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content-neutral. Id.

In the court's view, Section 901(G) is consistent with the Supreme Court's definition of content-neutral speech regulations. Section 901(G) provides that signs with flashing lights or electrically scrolled messages are prohibited, regardless of the content of the speech. Section 901(G) simply restricts the size, color, intensity, and technical method of displaying the speech. Section 901(G) makes no reference to the subject matter or message sought to be presented by the person displaying a sign. It is true that an exception is given to government signs and signs that display time and temperature information. However, these exceptions do not raise First Amendment concerns.[2] Government signs and signs that display time and temperature information do not "'give one side of a debatable public question an advantage in expressing its views to the people'" or allow the

---

[2] Defendants aver, and the court concludes, that the purpose of the government sign exception is to allow flashing or scrolling signs that display public safety and law enforcement messages.

Town to "'select the permissible subjects for public debate and thereby control the search for political truth'." La Tour v. City of Fayetteville, 442 F.3d 1094, 1096 (8th Cir. 2004) (quoting City of Ladue v. Gilleo, 512 U.S. 43, 51 (1994)). The exemptions do not suggest a preference by the Town for certain messages or discriminate against others based on content. The court concludes that section 901(G) does not facially distinguish between speech based on content and there is no evidence of content-based purpose. Therefore, the court turns to the question of whether the Ordinance furthers a substantial government interest, is narrowly tailored to further that interest, and leaves open ample alternative channels of communication. See Arlington Co. Republican Comm., 983 F.2d at 593.

As to the first factor, Section 102 of Article 1 of the Ordinance provides that "[t]he purposes of the zoning ordinance are to implement the land use element of the comprehensive plan and for those purposes set forth in S.C. Code § 6-29-710." S.C. Code § 6-29-710 authorizes local governments to enact zoning regulations for "the general purposes of guiding development in accordance with existing and future needs and promoting the public health, safety, morals, convenience, order, appearance, prosperity, and general welfare." Under section 6-29-710, zoning ordinances must be made with reasonable consideration of such purposes as facilitating the creation of a convenient, attractive, and harmonious community, among others.

Defendants contend that Section 901(G) serves the purposes of preserving aesthetics and enhancing traffic safety within the community. Contrary to Plaintiff's contentions, the Town's judgment that flashing or scrolling signs constitute a traffic hazard and are inconsistent with the rural community aesthetic is not unreasonable. Section 901(G) advances legitimate governmental interests. Accord Metromedia, 453 U.S. at 507-08 (noting that traffic safety and the appearance of

6

the city are substantial governmental goals); <u>Georgia Outdoor Advertising, Inc. v. City of Waynesville</u>, 833 F.2d 43, 46 (4th Cir. 1987) (same).

As to the second factor, the court finds that Section 901(G) is narrowly tailored to further the Town's interests. The Town has not prohibited all signage, or severely limited the number of signs one can display. The Town has gone no further than necessary to satisfy its aims of restricting signage that utilizes flashing lights, lights changing in intensity, and scrolling messages.

As to the third factor, the Ordinance does not prevent Plaintiff from displaying any message, whether commercial or noncommercial in nature, on a sign not prohibited by Section 901(G). In addition, Section 902 of the Ordinance allows for the display of banners, flags, sandwich boards, and inflatable signs. Although other types of signs may lack the flexibility or convenience of an EMC, Plaintiff is free to "speak" on whatever issue it pleases utilizing a medium not proscribed by section 901(G). The court concludes that Section 901(G) withstands First Amendment scrutiny.

C,    <u>Commercial Speech</u>

Plaintiff contends that the Ordinance as applied improperly restricts Plaintiff's commercial speech. "Commercial speech" is defined as "expression related solely to the economic interests of the speaker and its audience." <u>Central Hudson Gas & Elec. Corp. v. Pub. Svc. Comm'n</u>, 447 U.S. 557, 561 (1980). The First Amendment protects commercial speech from unwarranted government regulation. <u>Id.</u> (citing <u>Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council</u>, 425 U.S. 748, 761-62 (1976)). The Constitution accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. <u>Id.</u> at 563. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation. <u>Id.</u> If, as in this case, the communication is neither misleading nor related

to unlawful activity, the government must assert a substantial interest to be achieved by restrictions on commercial speech. Further, the regulatory technique must be in proportion to that interest. Id. at 564. The First Amendment mandates that speech restrictions be "narrowly drawn." Id. at 565.

Plaintiff contends that the Town is "attempting to impose the aesthetic whims of those in power on to Plaintiff's speech, without evidence demonstrating that the Town has a substantial interest in aesthetics, that the regulation will achieve any such interest, or that the Town considered the impact the regulations would have on the speech of those in the Town – including Plaintiff." Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, p. 17. The court disagrees. For the reasons stated in the previous section, no burden is imposed on Plaintiff's commercial speech under Section 901(G) of the Ordinance. Section 901(G) directly advances the Town's interests in aesthetics and traffic safety, and section 901(G) is narrowly drawn. Section 901(G) does not unconstitutionally restrict commercial speech.

D.    Prior Restraint

Plaintiff also contends the permitting process constitutes a prior restraint on commercial speech. Section 900.2 of the Ordinance provides:

> Except as otherwise provided in this Ordinance, it shall be unlawful for any person to erect, construct, enlarge, move or replace any sign or cause the same to be done, without first having obtained a sign permit for such sign from the Zoning Administrator as required by this Ordinance. A fee, in accordance with a fee schedule adopted by the Town Council, shall be charged for each sign permit issued.

> Notwithstanding the above, changing or replacing the copy on an existing lawful sign shall not require a permit, provided the copy change does not change the nature of the sign such as to render the sign in violation of this Ordinance.

Under Section 1101 of Article 11 of the Ordinance,

> . . . No building, sign or structure shall be erected, moved, enlarged, altered or demolished without a zoning permit issued by the Zoning Administrator. No permit shall be issued by the Zoning Administrator except for a use which is in conformity with the provision of this ordinance or for use authorized by order of the Board of Zoning Appeals.
>
>     . . . .
>
> . . . Applications for zoning permits shall be accompanied by plans in duplicate. . . The application shall include such other information as may be required by the Zoning Administrator to determine conformance with this ordinance . . . . One copy of the plans shall be returned to the applicant with the signed approval or disapproval of the Zoning Administrator noted on the copy within a reasonable time.

According to Plaintiff, the Ordinance contains no provision placing time limits on the granting or denying of permits and the Town is granted unbridled discretion in determining whether to grant a permit for a specific signage request. The court disagrees.

In the area of free expression a permitting regulation placing unbridled discretion in the hands of a government official or agency constitutes a prior restrain and may result in censorship. See 11126 Baltimore Blvd., Inc. v. Prince George's County, 58 F.3d 988, 994 (1995) (quoting City of Lakewood v. Plain Dealer Publ'g Co., 485 U.S. 750, 757 (1988)). Otherwise valid content-neutral time, place, and manner restrictions that require governmental permission prior to the applicant's engaging in protected speech are unconstitutional if they do not limit the discretion of the decisionmaker and provide for the procedural safeguards. Id. at 995.

With respect to limiting the discretion of the decisionmaker, Article 9 of the Ordinance clearly sets forth the criteria the Zoning Administrator must review to determine whether a permit is required and what criteria the sign must meet, including size and distance from the street. Article 9 specifies signs that are prohibited, signs that do not require a permit, and signs that do require a permit prior to installation. The court finds that the sign standards articulated in Article 9 of the

Ordinance limit the discretion of the decisionmaker. Significantly, the Ordinance contains no provision disallowing signs or requiring permits for signs based upon content.

With respect to procedural safeguards, Freeman v. Maryland, 380 U.S. 51, 58-60 (1965), provides that (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.

In this case, Section 1101 of the Ordinance mandates that the Zoning Administrator return a decision on a request for permit within a reasonable time. Section 1201(1) provides that a person aggrieved by a decision of the Zoning Administrator may appeal that decision to the Board of Zoning Appeals within fifteen days after actual notice of the decision. Section 1202 allows for an aggrieved person to appeal the decision of the Board of Zoning Appeals to state circuit court within thirty days after the decision is mailed. The court concludes that the Ordinance complies with the mandates of Freeman.

E.     Equal Protection

Plaintiff contends that Section 901(G) discriminates between similarly situated users based upon the message on the sign. Specifically, Plaintiff asserts that governmental users and users of time and temperature signs that flash or scroll are treated more favorably. The court has determined that Section 901(G) is content-neutral. Therefore, Section 901(G) is valid under the equal protection clause if "'the classification drawn by the [ordinance] is rationally related to a legitimate state interest.'" Taxi Cabvertising, Inc. v. City of Myrtle Beach, 26 Fed. Appx. 206, 208 (4th Cir. 2002). (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)). The court has

found valid the Town's judgment that flashing and scrolling signs constitute a traffic safety issue and are incompatible with the Town's interest in aesthetics. Plaintiff's allegation is without merit.

CONCLUSION

For the reasons stated, the court concludes that the Ordinance passes constitutional muster. Therefore, Defendants' motion for summary judgment (Entry 24) is **granted**. Plaintiff's motion for partial summary judgment (Entry 25) is **denied**. Plaintiff has not amended its complaint. Accordingly, the court declines to address Plaintiff's allegations regarding the Ordinance as revised on July 18, 2006.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 20, 2006

11